## Beale, Appellant, *v.* House of Refuge.

*Landlord and tenant—Subletting—New lease—Evidence.*

Where a tenant sublets rooms in the property leased to a corporation giving the latter the right to terminate the subletting on sixty days' notice, and the son of the tenant after his father's death continues to collect the rent until the sublessee gives the sixty days' notice and quits, the son cannot thereafter collect rent from the corporation under a claim that he had made a new verbal lease with it for a subletting from year to year, if he fails to establish the existence of such verbal lease by competent evidence.

Argued Dec. 14, 1914. Appeal, No. 262, by Rupert G. Beale, administrator, from order of C. P. No. 3, June T., 1906, No. 1650, refusing to take off nonsuit in case of Stephen T. Beale v. House of Refuge. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit for rent.

At the trial FERGUSON, J., entered a nonsuit delivering the following oral opinion:

This is an action by Stephen T. Beale against the House of Refuge for rent for the balance of the year.

It seems that the House of Refuge became a subtenant under Stephen T. Beale, the father, in 1880. Under the terms of that lease, which was in writing and which is in evidence, the tenant had the right to remove from the premises on sixty days' notice, and the landlord, Mr. Beale, had a right, whenever he wanted to vacate the building himself, if he made satisfactory arrangements with the Girard Estate, which owned the property, to go out of the building, and if he went out of the building the House of Refuge was bound to take the property for the balance of his term. There is no evidence that the lease between Mr. Beale and the House of Refuge was ever changed. It does appear that some time in 1893 Stephen T. Beale, the father, died, and Stephen T. Beale, his son, made a new arrangement with the Girard Estate, which owned the property, and he became the tenant and continued to collect the rent from the House of Refuge, presumably under the old lease, which was still in existence and binding upon the House of Refuge to pay the rent. The House of Refuge still had the privilege to vacate on sixty days' notice. It seems that in September or October, 1904, Mr. Beale, the son, received notice that the Girard Estate was about to increase the rent, and he notified the House of Refuge by letter that if the rent was increased he would call upon the House of Refuge to pay its proportion of the increased rent. Mr. N. DuBois Miller, counsel for the House of Refuge, went down and said the House of Refuge had a written lease and did not propose to pay any more rent during the running of the lease, that is, he said it had a yearly lease which did not expire until June. The lease was not exactly a yearly lease, but that was not really the point. The point is he would not agree to pay an increased rent, and in March Mr. Beale gave the House of Refuge notice that he would ask it after June to pay an increased rent at the rate of $40 a month. Up to that time it was paying $101 a quarter, which was thirty-three dollars and some cents a month,

and the rent was payable quarterly under the terms of the written lease.   Having received this notice, in the month of May the House of Refuge gave a written notice that it proposed to exercise its privilege of vacating the premises within sixty days, and it did vacate within sixty days.

It is contended on the part of the plaintiff that there was a new arrangement.   That is the contention which is alleged in the statement of claims, that there was a new arrangement between Stephen T. Beale, the son, and the House of Refuge, under which the House of Refuge bound itself for a year, in other words, bound itself to a lease year by year, under which circumstances it would be necessary under the law, unless there was a written lease providing otherwise, to give three months' notice of an intention to quit before the expiration of the year. The contention of the plaintiff, as indicated by the statement filed, is that the House of Refuge, having failed to give three months' notice of an intention to quit before the expiration of the year, it was bound for another year.

There is no evidence that there was such a contract made that the House of Refuge would hold from year to year.   The only contract that is in existence is a contract under which it had the right to vacate on sixty days' notice.   It was a rather burdensome contract on the House of Refuge in one sense, because if Mr. Beale made up his mind to vacate the property during his year, the House of Refuge had to assume the terms of the contract and take the whole building during the balance of the year.   There is some evidence that Mr. Beale, the father, who signed the original lease, had withdrawn from his tenancy of the Girard Estate, and that his son, who had the same name, had succeeded him. I do not think it makes very much difference if he did. The son would necessarily succeed to the contract which the father made with the subtenant, the House of Refuge, and it was within his power to exact a new contract and to require a new contract, but there is no evidence

that a new contract was ever made.  Conversations with clerks and bookkeepers and messengers and stenographers, who might have been in the office of the House of Refuge on Girard street, would not be evidence to bind the House of Refuge, which is a corporation run by executive officers and a board of directors.  There was mention made of several names, but Mr. Beale, the witness, did not know what the functions of those gentlemen were, and if, therefore, he did have a conversation with them, it would not bind the House of Refuge.  You would have a right to conclude, if it was important in the case, that the House of Refuge still considered it was dealing with the man with whom it made its original contract, that is Stephen T. Beale.  There is no evidence that the House of Refuge was notified that there was a change in the landlord.  The mere fact that some one else called to collect the rent did not indicate there was a change in the landlord, because very frequently landlords do not collect rents themselves; they send somebody else to do it.  I do not think that is very important.  The important thing is the plaintiff has not proved any change in the contract with the subtenant, the House of Refuge, and under the contract which the House of Refuge had, it had the right to vacate after sixty days' notice, and it exercised that right.  There is no evidence of any new contract by which it bound itself to pay for a whole year, and the contract the plaintiff has sued upon has not been proven.  I therefore enter a nonsuit.

*Error assigned* was order refusing to take off nonsuit.

*J. C. Heulings,* for appellant.—The question arises as to what was the legal relation between the son, upon his becoming the tenant from the Girard Estate and the subtenant, the House of Refuge.  The occupancy of the House of Refuge was not disturbed; they continued to pay rent at the old rate, but to a different person.  No

lease, verbal or otherwise, was entered into at that time and in accordance with the authorities the House of Refuge then became a tenant at will: Hey v. McGrath, 81½ Pa. 310: Pickering v. O'Brien, 23 Pa. Superior Ct. 125; Hughes v. Lillibridge, 22 Pa. C. C. R. 185; Heck v. Borda, 18 W. N. C. 212; Diller v. Roberts, 13 S. R. 60.

*Howard H. Yocum,* for appellee.

OPINION BY HEAD, J., October 11, 1915:

When the plaintiff in the court below closed his case, the learned trial judge entered a compulsory nonsuit. At the time of so doing he stated orally the reasons on which the judgment rested.   This statement exhibits, with sufficient detail, the facts of the case and notes the legal principles, which, when applied to the facts, necessarily resulted in the judgment of nonsuit.

If the learned judge was correct, as we think he was, in holding that the plaintiff's case had failed at its most vital point, but little discussion is needed here. The plaintiff sued to recover rent.   His primary burden therefore was to show a lease binding on the defendant, of the terms of which there had been a breach.   It became apparent, in the testimony produced, that there had been a written lease between the father of the plaintiff's decedent and the defendant.   Of the terms of this lease there had been no breach.   When the first lessor surrendered his tenancy to the Girard Estate and his son, of the same name, took it up, both he and the defendant, whose possession had never been disturbed, continued the relation of landlord and tenant as if there had been no change in the lease.   When the defendant elected to give notice and quit, it did precisely what the terms of the written lease authorized it to do.

The plaintiff then, to recover the rent he claimed, was compelled to aver a substitution of a new verbal lease for the one in writing which had theretofore controlled their relations.   This, of course, cast upon him the bur-

30, (1915).]          Opinion of the Court.

den of establishing, by competent evidence, the making of such new lease and its terms. It was at this point his evidence failed. Neither in the proof received nor in any offer of proof rejected can there be found any competent evidence to warrant a finding that any new lease, binding upon the defendant, had ever been executed. This being true, the other matters in controversy became comparatively unimportant, and the opinion of the learned trial judge, delivered from the bench, furnishes satisfactory reasons for the conclusion he reached. The assignments of error are overruled.

Judgment affirmed.